UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re: | Case No. 15-00870-FPC13 |
| TERELL W. EUSTLER,[1] | **NOT FOR PUBLICATION** |
| | MEMORANDUM DECISION |
| Debtor. | |

## **INTRODUCTION**

Parties-in-interest, Brady F. Carruth and William Leslie Doggett (collectively, the "Complaining Shareholders") filed a motion for relief from the automatic stay to exercise their rights through the Stock Restriction/Buy-Sell Agreement ("Agreement") to purchase debtor Terell W. Eutsler's shares in a jointly held software company called Softbase Development, Inc. [ECF No. 48]. Debtor objected. [ECF No. 51]. On January 24, 2017, the court held a preliminary hearing. [ECF Nos. 62 & 63]. At the conclusion of the hearing, the court set a final hearing and requested additional briefing on two issues: (1) whether the Agreement between

---

[1] The correct spelling of debtor's last name is Eutsler.

MEMORANDUM DECISION ~ Page 1

the parties constituted an executory contract; and (2) when the Complaining Shareholders first received notice of Mr. Eutsler's Chapter 13 bankruptcy. At the final hearing, the court heard argument of Andrew W. Zeve, attorney for the Complaining Shareholders, Anastasia L. Karson, attorney for the debtor, Melissa Williams, attorney for the Chapter 13 Trustee, and creditor/attorney Julie C. Watts. The court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334. The court has reviewed the evidence and testimony presented and the matter is ready for decision.[2]

## FACTUAL BACKGROUND

Terell Eutsler, Stephen J. Dorr, and the two Complaining Shareholders are the sole shareholders in Softbase Development, Inc., a Texas corporation which was formed on June 5, 1995. [ECF No. 48, Ex. 1]. The corporation's primary business is the creation, sale and service of enterprise software for industrial equipment dealers. [ECF No. 48]. Shareholders, Mr. Eutsler and Mr. Dorr, are also employees of the corporation and involved in the corporation's day-to-day operations. The Complaining Shareholders on the other hand, are not employees of the corporation and do not take an active role in the management of the company. [ECF Nos. 71 & 72]. Indeed, the only evidence presented of the Complaining Shareholders'

---

[2] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

involvement was their request in June of 2016 (about 20 years after the company was formed) to examine the company's books and records to assess the financial condition of the company. [ECF No. 70].

The Agreement at issue sets forth various "terminating" events, including a shareholder filing bankruptcy. [*See* ECF No. 48, Ex. 6; Articles I-III]. Once a terminating event occurs, it triggers an option allowing the corporation or the remaining shareholders to purchase the terminated shareholder's stocks.[3] *See id*. The option must be exercised within a thirty-day window or it expires. *See id*.

Mr. Eutsler filed for bankruptcy on March 12, 2015. [ECF No. 1]. Accordingly, the Complaining Shareholders argue that they have the right to exercise their purchase option of Mr. Eutsler's stock pursuant to the terms of the Agreement. Mr. Eutsler argues that his bankruptcy should not, as a matter of law, trigger the option and that even if the Complaining Shareholders did have an option to buy his shares that option expired because the Complaining Shareholders did not exercise their option within thirty days of learning about his bankruptcy. [ECF No. 61]. The Complaining Shareholders disagree, arguing that the thirty-day window to exercise the option has not expired because, although Mr. Eutsler filed for bankruptcy in March of 2015, they did not learn of the bankruptcy filing until November 18, 2016. [ECF No. 48]. The parties do not dispute that shareholder

---

[3] See Stock Restriction/Buy-Sell Agreement dated September 23, 1998 [ECF No. 48, Ex. 6].

Mr. Dorr, who also serves as the corporation's treasurer, knew about Mr. Eutsler's bankruptcy filing as early as March 19, 2015, when the Chapter 13 Trustee issued a wage directive to the corporation. [ECF No. 70].

The Complaining Shareholders now seek relief from the automatic to proceed with exercising their option rights under the Agreement. In the alternative, the Complaining Shareholders argue that Mr. Eutsler's stock is not property of the estate and therefore, not subject to the automatic stay. Mr. Eutsler argues that his stock is not an executory contract, it is merely an asset of the estate and necessary for his reorganization

## DISCUSSION

### I. The Agreement is not an executory contract.

A chapter 13 plan may provide for the assumption or rejection of any executory contract of the debtor not previously rejected under section 365 of title 11. 11 U.S.C. § 1322(b)(7). Whether a contract is executory within the meaning of the Bankruptcy Code is a question of federal law. *See Benevides v. Alexander (In re Alexander)*, 670 F.2d 885, 888 (9th Cir. 1982). Additionally, whether a contract is executory is "a factual question to be determined by the bankruptcy court." *In re Robert L. Helms Constr. & Dev. Co., Inc.*, 139 F.3d 702, 705 n.13 (9th Cir. 1998). Although the Code does not define "executory contract," the Ninth Circuit and most other courts have adopted the "Countryman" definition. According to Professor

Countryman, an executory contract is a contract under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other. *Pacific Express, Inc. v. Teknekron Infoswitch Corp. (In re Pacific Exp., Inc.)*, 780 F.2d 1482, 1487 (9th Cir. 1986). The Ninth Circuit has further clarified that a contract will only be determined to be executory if, on the date of filing the bankruptcy petition, there exist obligations of both parties that are so far unperformed that the failure of either party to complete performance would constitute a *material breach* and thus excuse the performance of the other. *See id.*

Thus, even if the court agrees with the Complaining Shareholders' premise; that there are continuing obligations of both parties, the court must then determine whether a party's failure to comply with those obligations would constitute a material breach. To determine this, the court must look to state law to determine the significance of the remaining obligations, as state law controls with regard to property rights in assets of a debtor's estate. *See Hall v. Perry (In re Cochise College Park, Inc.)*, 703 F.2d 1339, 1348 n.4 (9th Cir. 1983) (explaining the question of the legal consequence of one party's failure to perform its remaining obligations under a contract and whether one of the parties' failure to perform its remaining obligations would give rise to a material breach is an issue of state

contract law). In this case, the Agreement in question was signed and executed in Texas. Therefore, this court will look to Texas state law to determine whether any remaining obligations rise to the level such that a failure to perform any of those obligations would give rise to a material breach.[4]

Texas courts follow the framework outlined in the Restatement of Contracts to determine whether a breach is material.[5] *Mustang Pipeline Co., Inc. v. Driver Pipeline Co.,* 134 S.W.3d 195, 199 (Tex. 2004). Generally however, under Texas law a breach of contract is material if it is so substantial as to defeat the purpose of the transaction or so severe as to justify the other party's suspension of performance. *Id*.

The Complaining Shareholders argue that the Agreement contains several ongoing obligations and that those obligations are sufficient to render the Agreement executory. Therefore, a court must, as this court has done here, conduct a factual

---

[4] The court notes that neither party cited Texas law to support whether the alleged obligations rise to the level such that a failure to perform would give rise to a material breach.

[5] In determining whether a breach of contract is material, the following factors are significant: (1) the extent to which the injured party will be deprived of the benefit which he reasonably expected; (2) the extent to which the injured party can be adequately compensated for the breach; (3) the extent to which the party failing to perform will suffer forfeiture; (4) the likelihood that the breaching party will cure its breach, taking into account all of the circumstances including any reasonable assurances; and (5) the extent to which the behavior of the breaching party comports with standards of good faith and fair dealing. *Hernandez*, 875 S.W.2d at 693 n.2 (Tex. 1994) (citing Restatement (Second) of Contracts § 241 (Am. Law Inst. 1981)). "The less the non-breaching party is deprived of the expected benefit, the less material the breach." *Hernandez*, 875 S.W.2d at 693. Whether a breach is material is a question of fact. *Hudson v. Wakefield*, 645 S.W.2d 427, 430 (Tex. 1983).

inquiry to determine whether, on the date the petition was filed, *see Collingwood Grain, Inc. v. Coast Trading Co., Inc. (In re Coast Trading Co.)*, 744 F.2d 686, 692 (9th Cir. 1984), either party's failure to perform its remaining obligations would give rise to a material breach and excuse performance. *In re Wegner,* 839 F.2d 533, 536 (9th Cir. 1988). If either "party has substantially performed its side of the bargain, such that the party's failure to perform further would not constitute a material breach excusing performance by the other party, [then] a contract is not executory." *In re Munple, Ltd.*, 868 F.2d 1129, 1130 (9th Cir. 1989) (internal quotation marks and citation omitted).

Specifically, the Complaining Shareholders argued the following on-going mutual obligations and negative covenants are sufficient to render the Agreement executory: the right of first refusal as to selling shares; obligation to give written notice of involuntary assignment; anti-competition clause; non-disparagement clause; and covenant against encumbrances. The court disagrees. The court notes that the case law on this issue is far from clear or consistent. Although the briefing by the attorney for the Complaining Shareholders was well-written and his oral argument clear and cogent, the court finds that restrictive covenants, such as non-compete, confidentiality, and non-interference, are not sufficiently material to render the Agreement executory under the Countryman test. *See In re Robert L. Helms Constr.*, 139 F.3d 702 (en banc panel concluded that if an option was not in the

process of being exercised at the time of the bankruptcy, it was not an executory contract).[6]

Contrary to the Complaining Shareholders assertions, the mere fact that the Agreement contains several negative covenants does not persuade this court that the Agreement is executory for purposes of 11 U.S.C. § 365. Rather, based on the facts presented, the court concludes that the remaining obligations on the part of the debtor to comply with the restrictive covenants do not rise to the requisite level of materiality necessary for the Agreement to be considered executory. Indeed, there was no evidence presented that the debtor's breach of one of these covenants would be deemed a material breach of the Agreement thus relieving the remaining shareholders of their obligations. Rather than being a material breach excusing future performance, the court finds that a failure to comply with one of the negative covenants might entitle the remaining shareholders, at most, to injunctive relief or an

---

[6] *See also In re Munple*, 868 F.2d at 1130-31 (finding commission agreements are executory even though may contain a provision conditioning payment on closing the sale); *Employees Retirement System of Hawaii v. Osborne (In re THC Financial Corp.)*, 686 F.2d 799, 804 (9th Cir. 1982) (indemnification obligation did not render the agreement not executory); *In re Alexander*, 670 F.2d 885 (mortgage agreement not executory); *Shults & Tamm v. Brown (In re Hawaiian Telcom Communs., Inc.)*, 2012 WL 273614 (Bankr. D. Haw. Jan. 30, 2012) (collecting cases and concluding that the "majority of cases examining non-competition and non-solicitation obligations hold that these provisions are not sufficiently material under the Countryman test."); *In re Bergt*, 241 B.R. 17 (Bankr. D. Alaska 1999) (a right of first refusal possessed by another owner of lots in a subdivision was not an executory contract, and therefore could not be rejected, where no sale of the property was pending at the time the bankruptcy petition was filed); *In re Spectrum Info. Technologies*, 190 B.R. 741, 749-50 (Bankr. E.D. N.Y. 1996) (non-debtor employees' duties of non-competition, confidentiality, public statement and non-interference insufficient); *see contra In re III Enterprises, Inc. V*, 163 B.R. 453 (Bankr. E.D. Pa. 1994) (collecting cases and concluding that most courts applying the Countryman definition find option contracts to be executory).

award of damages. *See Amoco Prod. Co. v. Alexander*, 622 S.W.2d 563, 571 (Tex. 1981); *Zachry Const. Corp. v. Port of Houston Auth. of Harris Cty.*, 449 S.W.3d 98 (Tex. 2014).

At the hearing, it was stated that the Complaining Shareholders want to purchase Mr. Eutsler's stock in order to have more control of the company. This is despite evidence, that since the beginning of the company, the Controlling Shareholders have not taken any type of active role in managing or controlling the company. Evidence was not presented indicating that Mr. Eutsler is failing to perform. Indeed, counsel for the Complaining Shareholders repeatedly stated that the debtor is the only one who writes the software and knows how to run it and that the company continues to need him. Thus, from the evidence presented, it appears that the Complaining Shareholders are getting the benefit of the bargain. *See Hernandez v. Gulf Group Lloyds*, 875 S.W.2d 691, 693 (Tex. 1994) (explaining that "[i]n determining the materiality of a breach, courts…consider…the extent to which the nonbreaching party will be deprived of the benefit that it could have reasonably anticipated from full performance"). Such evidence weighs against finding a failure to comply with one of the negative covenants, a material breach.

Therefore, this court finds that the Agreement was not an executory contract within the meaning of section 365 of the Bankruptcy Code on the date the bankruptcy was filed. Consequently, 11 U.S.C. § 365 is inapplicable in this case.

## II. The Agreement is subject to the automatic stay.

The court finds that regardless of when the Complaining Shareholders found out about the debtor's bankruptcy, they are not entitled to enforce the stock purchase provision because the triggering/terminating event was the debtor's filing of bankruptcy. The Bankruptcy Code protects debtors from such ipso facto provisions. *See* Bankruptcy Code §§ 365(e)(1) and 541(c)(1)(B). Ipso facto provisions are those provisions that allow the discretionary or automatic termination of the debtor's contract and property rights merely because the debtor filed a bankruptcy petition or becomes insolvent.[7] *See In re Cole*, 226 B.R. 647 (B.A.P. 9th Cir. 1998). Because ipso facto clauses are unenforceable as to Mr. Eutsler's economic interests in the company, any provision that requires the transfer of such economic interests is unenforceable. The court is also concerned that Mr. Eutsler's employment may be in jeopardy if he was forced to sell his interest in the company. Mr. Eutsler employment income is necessary to make his Chapter 13 Plan payments.

---

[7] Bankruptcy Code § 541, in addition to describing what constitutes property of the bankruptcy estate, also invalidates ipso facto clauses, providing that a debtor's interest "in property becomes property of the estate…notwithstanding any provision in an agreement, transfer instrument, or applicable nonbankruptcy law…that is conditioned on…the commencement of a case under this title...and that effects or gives an option to effect a forfeiture, modification, or termination of the debtor's interest in property." 11 U.S.C. § 541(c)(1)(B). Additionally Black' Law Dictionary describes an ipso facto clause as a contractual or other provision that results in a loss of property rights or the elimination or limitation of obligations that existed prior to the commencement of a bankruptcy which loss, elimination or limitation occurs by reason of the debtor's bankruptcy (or a debtor's insolvency or financial condition or the appointment for a debtor of a custodian-triggers not relevant to the motions). *See* Black's Law Dictionary 834 (7th ed. 1999).

Therefore, this court will enter an order denying the Complaining Shareholders' motion for relief from the automatic stay.

///END OF MEMORANDUM DECISION///